UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

TJ SAMSON COMMUNITY HOSPITAL
1301 North Race Street
Glasgow, KY 42141,

                Plaintiff

      vs.

ROBERT F. KENNEDY, JR.,
Secretary of the United States Department of
Health and Human Services
200 Independence Avenue, SW
Washington, DC 20201

      and

THOMAS J. ENGELS,
Administrator of the Health Resources and Services
Administration
5600 Fishers Lane
Rockville, MD 20857,

                Defendants.

Case No. 1:25-cv-4333

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF UNDER THE 340B STATUTE**

1. This is a civil action brought to obtain declaratory relief invalidating: 1) a policy adopted by the Health Resources and Services Administration ("HRSA"), acting on behalf of the Secretary of Health and Human Services ("Secretary"), extending the hospital eligibility restriction in the 340B Drug Pricing Program ("340B Program")—namely, the restriction that hospitals not obtain covered outpatient drugs ("CODs") through a group purchasing organization ("GPO")—to a retail pharmacy affiliated with but not part of the hospital for 340B Program purposes; 2) Finding 1 and related portions of HRSA's final audit report of Plaintiff's 340B

1

Program operations adopting this policy; and 3) a policy adopted by HRSA that declares hospitals retroactively ineligible for the 340B Program for allegedly purchasing CODs through a GPO. This action is brought pursuant to the Administrative Procedures Act ("APA"), 5 U.S.C. § 551 et seq.

2. Congress enacted the 340B Program to allow certain safety net providers to purchase CODs from manufacturers at a discounted price. *Astra USA, Inc. v. Santa Clara County*, 563 U.S. 110, 115 (2011). The purpose of the 340B Program is to help these providers "stretch scarce Federal resources as far as possible, reaching more eligible patients and providing more comprehensive services." H.R. Rep. No. 102-384, pt. 2, at 12 (Sept. 22, 1992).

3. Plaintiff TJ Samson Community Hospital ("TJCH") is an acute-care hospital that participates in the 340B Program and operates Pavilion Pharmacy, which is an offsite retail pharmacy that is not located within TJCH. TJCH qualifies for participation in the 340B Program because it is a disproportionate share hospital ("DSH"). *See* 42 U.S.C. § 256b(a)(4)(L). The 340B statute states that DSH hospitals may not obtain CODs through a GPO or other group purchasing arrangement. *Id.* § 256b(a)(4)(L)(iii) (hereinafter "GPO limitation").

4. HRSA conducted an audit of TJCH's 340B Program operations. In a final audit report dated April 3, 2025, HRSA alleged that TJCH violated the GPO limitation because Pavilion Pharmacy purchased two GPO drugs.

5. HRSA's finding that TJCH violated the GPO limitation is contrary to the 340B statute because, under the definition of DSH in the 340B statute, Pavilion Pharmacy is not part of TJCH. 42 U.S.C. § 256b(a)(4)(L). Because Pavilion Pharmacy is not a DSH under the statutory definition, and the GPO limitation applies only to DSHs, Pavilion Pharmacy is not subject to the GPO limitation.

6. HRSA's finding that TJCH violated the GPO limitation is also contrary to the 340B statute because the two drugs in question were not CODs. *Id.* § 256b(a)(3). One of the drugs did not meet the definition of COD because it was not a prescription drug and the other drug was not reimbursable by Medicaid. *Id.*

7. HRSA's finding that TJCH violated the GPO limitation is, therefore, arbitrary, capricious, an abuse of discretion, and contrary to statutory law in violation of the APA.

8. HRSA's final audit report relied upon its Policy Release 2013-1. HRSA, Release No. 2013-1, Statutory Prohibition on Group Purchasing Organization Participation (Feb. 7, 2013) ("Policy Release 2013-1"), https://www.hrsa.gov/sites/default/files/hrsa/opa/prohibition-gpo-participation-02-07-13.pdf. The provision in Policy Release 2013-1 purporting to authorize HRSA to remove a covered entity from the 340B program for a violation of the GPO limitation is unlawful because it is contrary to the 340B statute and was issued without following the parameters of the Administrative Procedure Act.

9. TJCH asks this Court to issue an order declaring invalid and setting aside the HRSA finding that TJCH violated the GPO limitation and the provision in Policy Release 2013-1 allowing HRSA to remove a covered entity from the 340B Program for a violation of the GPO limitation.

**JURISDICTION AND VENUE**

10. TJCH brings this suit under the APA, 5 U.S.C. § 551 et seq. and the Declaratory Judgment Act, 28 U.S.C. § 2201.

11. This Court has jurisdiction under 28 U.S.C. § 1331

12. Venue is proper in this Court under 28 U.S.C. § 1391(e) because Defendant is an Officer of the United States acting in his official capacity, and Defendant's agency, HHS, is located in this district.

**PARTIES**

13. TJCH is a safety-net hospital that has been providing care to patients in the southcentral Kentucky region since 1929. TJCH serves all patients regardless of their ability to pay. TJCH participates as a "covered entity" in the 340B Program under the criteria at 42 U.S.C § 256(a)(4)(L). Hospitals that participate in the 340B Program under this subparagraph are generally referred to as 340B DSH hospitals. TJCH has been assigned 340B identification number DSH180017.

14. Defendant Robert F. Kennedy Jr. is the Secretary of the U.S. Department of Health and Human Services ("HHS") and is the federal officer responsible for administering the 340B Program pursuant to the Social Security Act. Defendant Kennedy is sued in his official capacity. The Secretary has delegated much of the responsibility for administering the 340B program to HRSA, which is a component of HHS.

15. Defendant Thomas J. Engels is the Administrator of HRSA. Defendant Engels is sued in his official capacity.

**LEGAL BACKGROUND**

**I.   APA Review**

16. The APA establishes the legal framework for federal agencies, such as HRSA, to promulgate rules and regulations. Courts, including the United States Supreme Court, hold that judicial review under the APA is appropriate for an entity to seek review of HRSA action related

to the 340B Program.  *See Astra USA, Inc.*, 563 U.S. at 121-122; *see also Pharm. Research & Mfrs. of Am. vs Dep't. of Health & Hum. Servs.*, 43 F. Supp. 3d 28, 35-36 (D.D.C. 2014).

17. A reviewing court may "hold unlawful and set aside" any aspect of an agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A); *see also Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 414 (1971); *Bowman Transport. v. Aks-Best Freight System*, 419 U.S. 281 (1974).

18. The APA distinguishes between interpretive rules and substantive rules.  Substantive rules have the force and effect of law and must generally be issued through notice and comment rulemaking. 5 U.S.C. § 553.  Interpretive rules contain the agency's understanding of a statute, but do not carry the force of law, do not receive substantial deference from reviewing courts, and do not affect the legal rights of parties.  *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944).

19. The D.C. Circuit established a three-part test for determining whether an agency has promulgated a substantive rule.  If anyone of these factors is met, the rule is considered substantive:

> (1) whether in the absence of the rule there would not be an adequate legislative basis for enforcement action or other agency action to confer benefits or ensure the performance of duties;
>
> (2) whether the agency has explicitly invoked its general legislative authority; or
>
> (3) whether the rule effectively amends a prior legislative rule.

*Am. Mining Cong. v. Mine Safety & Health Admin.*, 995 F.2d 1106, 1112 (D.C. Cir. 1993).

20. The D.C. Circuit has held that deficient notice of an agency rule is a "fundamental flaw" that almost always requires vacatur by the reviewing court. *See Allina Health Servs. v. Sebelius*, 746 F.3d 1102, 1106, 1110 (D.C. Cir. 2014).

**II.     The 340B Program**

21. The precursor to the 340B Program is the Medicaid Drug Rebate Program, adopted by Congress in 1990. *See* 42 U.S.C. § 1396r-8. This law requires pharmaceutical manufacturers to provide rebates for claims for CODs submitted to Medicaid agencies based on the manufacturers' "best price" offered to purchasers. The statute led to substantial price increases for drugs purchased by health care providers because drug manufacturers were incentivized to reduce their best prices and thereby limit the amount of their rebates to Medicaid. *See Genesis Health Care. v. Becerra*, 701 F. Supp. 3d 312, 315–16 (D.S.C. 2023).

22. In 1992, Congress created the 340B Program to protect certain hospitals and clinics ("covered entities") from price increases by drug manufacturers. Congress stated that the purpose of the 340B Program was to help covered entities "stretch scarce Federal resources as far as possible, reaching more eligible patients and providing more comprehensive services." H.R. Rep. No. 102-384 at 12. 340B hospitals … generally serve low-income or rural communities." *Am. Hosp. Ass'n v. Becerra*, 596 U.S. 724, 727 (2022).

23. Covered entities include (among others) certain government-owned and non-profit hospitals serving a disproportionate share of low-income patients, certain children's hospitals and standalone cancer hospitals, critical access hospitals, rural referral centers, and various entities receiving federal grants. 42 U.S.C. § 256b(a)(4). Pharmacies are not listed as covered entities in the 340B statute. *Id*.

24. The definition of a DSH in the 340B statute is a "subsection (d) hospital (as defined in section 1886(d)(1)(B) of the Social Security Act)" and that meets certain criteria. 42 U.S.C. § 256b(a)(4)(L). Section 1886 of the Social Security Act is commonly referred to as the Medicare statute and § 1886(d) of the Social Security Act describes the Medicare reimbursement system for inpatient care provided by acute care hospitals, generally known as Medicare "Part A." Notably, retail pharmacies that serve the community in general (rather than inpatients or patients during an outpatient encounter) do not receive Medicare reimbursement under this section of the Medicare statute. Instead, Medicare reimburses pharmacies for dispensing drugs to Medicare beneficiaries under a prescription drug benefit known generally as "Part D." Social Security Act § 1860D-1 et seq; 42 U.S.C. § 1395w-101 et seq.

25. On September 19, 1994, HRSA published guidelines on the definition of "disproportionate share hospital" for purposes of participation in the 340B Program. Notice Regarding Section 602 of the Veterans Health Care Act of 1992 Outpatient Hospital Facilities, 59 Fed. Reg. 47,884 (Sept. 19, 1994). The September 19, 1994, guidelines state: "Congress referred to section 1886 of the Social Security Act (Medicare inpatient hospital payment) for the definition of DSH; therefore, it is reasonable to utilize existing Medicare rules to determine eligibility for [340B] discount pricing. *Id.* at 47885. The agency stated that a DSH "outpatient facility is considered an integral part of the 'hospital' and therefore eligible for section 340B drug discounts if it is a reimbursable facility included on the hospital's Medicare cost report." *Id.* at 47886. Only after a DSH hospital submits a request to include the outpatient facility on its cost report and the request is certified, will the "off-site facilities . . . be able to access [340B] discount pricing." *Id*.

26. An off-site outpatient department of a hospital that is eligible to participate in the 340B Program under the criteria above is generally known as a "child site." HRSA, *How should a hospital determine if an off-site outpatient facility is eligible for 340B as a child site and should be added to the 340B OPAIS?* (last visited Dec. 9, 2025), https://www.hrsa.gov/about/faqs/how-should-hospital-determine-if-site-outpatient-facility-eligible-340b-child-site-should-be-added.

27. HRSA has clarified that a pharmacy cannot register as a covered entity or as a "child site." HRSA, *Can a covered entity list an in-house pharmacy as a child site?* (last visited Dec. 9, 2025), https://www.hrsa.gov/about/faqs/can-covered-entity-list-house-pharmacy-child-site.

28. HRSA has delegated responsibility to a "prime vendor," Apexus, to advise covered entities about 340B Program requirements. *See* 42 U.S.C. § 256b(a)(8). HRSA advises covered entities that they can rely upon information from Apexus because such information is "verified and endorsed by HRSA." *340B Prime Vendor Program*, Apexus, FAQ ID: 1524 (last visited Dec. 9, 2025), https://www.340bpvp.com/hrsa-faqs/340b-prime-vendor-program. Like HRSA, Apexus advises that: "An offsite hospital outpatient facility is eligible to be registered as a child site if it is listed as a reimbursable facility on the parent hospital's most recently filed Medicare cost report and has associated costs and changes…." *Id.* at FAQ ID: 1295. Like HRSA, Apexus advises that pharmacies cannot be registered as child sites. *Id.* at FAQ ID: 1303.

29. Pharmacies that are affiliated with a covered entity may be listed as "shipping addresses" of the covered entity in order to receive 340B drugs on behalf of the covered entity. *Id.*; *see also id.* at FAQ ID: 1577.

30. Covered entities are prohibited from providing 340B drugs to individuals who are not patients of the covered entity (known as the prohibition against "diversion") and from claiming a 340B discount for a drug that is subject to a Medicaid rebate (known as the prohibition against "duplicate discounts"). 42 U.S.C. § 256b(a)(5)(A)(i).

31. HRSA can terminate covered entities from the 340B program only if the covered entity violated the diversion prohibition or the duplicate discount provision and if the violation is "systematic and egregious as well as knowing and intentional." 42 U.S.C. § 256b(d)(2)(B)(v)(II). Although the GPO limitation is a 340B Program eligibility requirement applicable to DSH hospitals, the 340B statute does not authorize HRSA to establish a remedy that retroactively terminates a DSH hospital for violation of the GPO limitation.

### III. The 340B GPO Limitation

32. The 340B statute states that certain covered entities, including DSH hospitals, may not obtain CODs through a GPO. 42 U.S.C. § 256b(a)(4)(L)(iii). The practical impact of the GPO limitation is that, in situations in which a DSH hospital cannot use 340B drugs (for example, if the 340B drug is not available or the individual who needs the drug is not a patient of the DSH hospital under 340B Program guidelines), the hospital must purchase the drug either directly from the manufacturer or from a wholesaler at wholesale acquisition cost ("WAC"). WAC prices are significantly higher than GPO prices.

33. The 340B statute incorporates the definition of "covered outpatient drugs" from Social Security Act § 1927(k), which defines CODs as those drugs that are "treated as prescribed drugs" and "which may be dispensed only upon prescription." 42 U.S.C. §1396r-8(k)(2). The term "does not include any drug . . . provided as part of, or as incident to and in the same setting as . . . and for which payment may be made under this subchapter" for a variety of services,

9

including physician services and outpatient hospital services. 42 U.S.C. §1396r-8(k)(3).  The "subchapter" referred to in this provision is the Medicaid statute.

34. Congress was clear during the creation of the 340B Program that it did not intend to disturb entirely the ability of covered entities to purchase CODs through GPOs:

> The Committee recognizes that the public disproportionate share hospitals which the Committee is seeking to protect from high drug prices may participate in, or themselves maintain, group purchasing arrangements for a variety of purposes, including the purchase of supplies and equipment as well as pharmaceuticals. The Committee does not intend to disturb these arrangements or to require the withdrawal of these hospitals from these organizations or arrangements.

H.R. Rep. No. 102-384, pt.2, at 14-15 (1992).  Congress included the GPO limitation in the statute based on a common-sense goal of forcing 340B hospitals to choose between two different mechanisms for obtaining discounts on CODs: a GPO or the 340B program. *Univ. Med. Ctr. of S. Nev. v. Shalala*, 5 F. Supp. 2d 4, 6 (D.D.C. 1998), *aff'd*, 173 F.3d 438 (D.C. Cir. 1999).

35. In May 1993, HRSA issued guidance stating only that the 340B discount "need not be provided for drugs which the hospital obtains through a group purchasing arrangement." The guidance does not state that DSH hospitals are categorically prohibited from participating in group purchasing arrangements.  Guidance Regarding Section 602 of the Veterans Health Care Act of 1992; Limitation on Price of Drugs Purchased by Covered Entities, 58 Fed. Reg. 27289 (May 7, 1993).

36. In May 1994, HHS finalized guidance prohibiting covered entities from participating in a group purchasing arrangement and the 340B Program for covered outpatient drugs: "[i]f a DSH participates in a GPO or other group purchasing arrangement for covered outpatient drugs, the DSH will no longer be an eligible covered entity and cannot purchase covered outpatient drugs at the section 340B discount prices."  Final Notice Regarding Section 602 of the Veterans Health Care Act of 1992, 59 Fed. Reg. 25110, 25113 ("1994 Final Notice").

37. In 2013, HRSA expanded its GPO limitation in Policy Release 2013-1. HRSA stated that "covered entities found in violation will be considered ineligible and immediately removed from the 340B Program." Policy Release 2013-1 states that, "Organizations that are not part of the 340B covered entity are not subject to the GPO prohibition . . . ."

38. Covered entities are permitted to purchase drugs used for inpatients or other drugs that are not included in the statutory definition of "covered outpatient drug" using a group purchasing arrangement. Virtually all hospitals use a 340B account to purchase CODs and a GPO account to purchase inpatient drugs.

## FACTS SPECIFIC TO THIS CASE

39. TJCH is a DSH that participates in the 340B Program. TJCH serves over 330,000 residents covering twelve counties in southcentral Kentucky. TJ Samson Community Hosp., Community Health Needs Assessment and Strategic Implementation Plan at 7 (2022), https://www.tjregionalhealth.org/about-us/community-needs-assessment/.

40. Pavilion Pharmacy is a state-licensed retail pharmacy that serves as a shipping address for TJCH. It is an open-door retail pharmacy owned by TJCH that serves both the general public and patients of TJCH. Pavilion Pharmacy customers may have minimal or no connection to TJCH or they may be TJCH inpatients or outpatients who received a prescription for self-administered drugs as part of that care. Pavilion Pharmacy is located at 310 N L. Rogers Wells Boulevard in Glasgow, Kentucky. The building located at 310 N L. Rogers Wells Boulevard is often called the TJ Health Pavilion building because it houses a variety of clinics and offices, some of which are managed by TJCH and others that are not. TJCH has separately registered child sites at the TJ Health Pavilion building, but Pavilion Pharmacy is not located inside any of those child sites.

41. Pavilion Pharmacy is neither located within the four walls of TJCH nor is it within any registered child site of TJCH. Although Pavilion Pharmacy and TJCH are part of the same legal entity, their shared organizational structure is not relevant to their compliance with the GPO limitation or any other 340B requirement. HRSA is aware that Pavilion Pharmacy is not registered in the 340B database and purchases and maintains drugs separately from TJCH.

42. Pavilion Pharmacy is not listed on the TJCH Medicare cost report as a "reimbursable" facility. Instead, it is listed in a "nonreimbursable" section of the Medicare cost report.

43. Policy Release 2013-1 states that DSH hospitals are subject to the GPO limitation, referencing the statutory definition of DSH at 42 U.S.C. § 256b(L)(4). It also states that, "[o]rganizations that are not part of the 340B covered entity are not subject to the GPO prohibition . . . ." Similarly, it states that "[h]ospitals and their off-site outpatient clinic sites that are registered on the OPA 340B database as participating in the 340B Program are subject to the GPO prohibition . . . ."

44. TJCH outsources management of Pavilion Pharmacy's operations to Cardinal Health ("Cardinal"), one of the largest providers of pharmacy and related services in the nation. Cardinal and TJCH have set up Pavilion Pharmacy's wholesaler and GPO accounts and developed internal policies and procedures to ensure compliance with the GPO limitation (as interpreted based on Policy Release 2013-1) and other 340B compliance requirements.

45. Pavilion Pharmacy's procurement and inventory management systems are based on a model that is used by other 340B health systems and supported by Apexus. Under that procurement and inventory management system, Pavilion Pharmacy does not transfer GPO drugs to TJCH.

46. Apexus provides training focused on the GPO limitation, which describes a compliant purchasing arrangement that is virtually identical to the one used by TJCH and Pavilion Pharmacy. Apexus Module 15 describes a scenario in which an entity-owned pharmacy is in the same building as a registered child site but outside the registered clinic. The module states that pharmacies outside of the registered clinics would not be subject to the GPO limitation.

47. TJCH requested guidance from Apexus on whether Pavilion Pharmacy may purchase GPO drugs. Apexus advised TJCH that, "HRSA does not have a specific policy that applies in this situation to pharmacies." It forwarded to TJCH an FAQ that states that "The GPO prohibition applies to covered entity sites which are registered for the 340B Program." Implicit in the FAQ guidance is that the GPO limitation does not apply to sites that are not registered in the 340B Program.

48. The drug purchasing and inventory maintenance programs used at Pavilion Pharmacy is consistent with this Apexus guidance. TJCH recognized that its retail pharmacy operations needed to be disassociated from its hospital pharmacy operations and located Pavilion Pharmacy separately from its parent location to ensure that retail pharmacy purchases under a GPO account would not be used by or transferred to TJCH or a child site of TJCH.

49. The GPO account that Pavilion Pharmacy uses to purchase GPO drugs is in the name of Pavilion Pharmacy and used solely by Pavilion Pharmacy. The wholesaler under contract with Pavilion Pharmacy bills and ships GPO drugs to Pavilion Pharmacy under that account.

50. Any GPO drugs purchased under the GPO account are received, stored and dispensed solely by Pavilion Pharmacy, not TJCH. Pavilion Pharmacy does not transfer GPO drugs to TJCH.

51. TJCH has adopted policies and procedures to ensure compliance with 340B Program requirements. TJCH's policy on compliance with the GPO limitation states:

> Covered entities that are DSH hospitals (including their off-site outpatient child sites) that are registered on the OPA 340B database as participating in the 340B Program are subject to the GPO Prohibition; thus, said covered entities cannot purchase any covered outpatient drugs through a GPO or other group purchasing arrangement.
>
> TJ Samson's policy is that no covered DSH entity will purchase any eligible outpatient drugs under GPO pricing arrangements under any circumstance. Rather, only WAC and 340B (where appropriate) accounts and pricing structures may be used for covered outpatient drug purchases. GPO arrangements are only used on excluded items (vaccines) and for eligible inpatient drug purchases.
>
> TJ Samson includes a review of GPO purchases as part of the internal audit process to ensure that GPO purchases are only made for patients with "in-patient" status at the time of dispense/administration.

52. TJCH and Cardinal maintain internal policies and auditing procedures ensuring compliance with the GPO limitation.

53. On October 17, 2022, and October 18, 2022, HRSA conducted a 340B audit of TJCH. The audit covered TJCH 340B Program activities from January 1, 2022, through June 30, 2022.

54. On or around April 12, 2023, HRSA emailed TJCH its audit report accompanied by a letter signed on behalf of Emeka Egwin, then Director of HRSA's Office of Pharmacy Affairs ("OPA"). The audit report alleged two compliance findings resulting from the TJCH audit: 1) TJCH violated the 340B limitation against making purchases using a GPO; and 2) TJCH dispensed 340B drugs to a patient ineligible for the 340B program. This action does not challenge the second finding.

55. HRSA's audit report alleges that TJCH violated the GPO limitation because Pavilion Pharmacy purchased two drugs on its GPO account: 1) Sildenafil Citrate TB 20MG 90, NDC: 13668018590; and 2) Acetemin Lq 160MG/5ML 473ML CHY, NDC: 69367032316. HRSA's April 12, 2023, audit report stated that if the Pavilion Pharmacy continues to use a GPO account to purchase CODs, HRSA will remove TJCH from the 340B Program.

56. Sildenafil Citrate is the generic name for the drug commonly known as Viagra, used to treat erectile dysfunction and pulmonary arterial hypertension as well as other off-label ailments. U.S. Food & Drug Admin., Highlights of Prescribing Information for VIAGRA, Reference ID: 3466301 (Mar. 2014), https://www.accessdata.fda.gov/drugsatfda_docs/label/2014/20895s039s042lbl.pdf; Benjamin Smith & Mary Babos, Sildenafil, Nat'l Lib. Med. (Feb. 14, 2013), https://www.ncbi.nlm.nih.gov/books/NBK558978/. The Sildenafil Citrate product at issue is on the Kentucky Medicaid formulary, but it requires a clinical prior authorization before a prescription can be dispensed and covered by Medicaid. If Sildenafil Citrate is prescribed for anything other than a "diagnosis of pulmonary hypertension," the drug falls outside of Kentucky's Medicaid formulary as an "[i]tem or service that Medicaid does not cover." *See* Kentucky Medicaid – Preferred Drug List (PDL), MedImpact (Dec. 2025), https://kyportal.medimpact.com/sites/default/files/2023-12/kentucky-medicaid-pdl.pdf. In this case, the medication was prescribed to treat erectile dysfunction. Because Sildenafil Citrate 20mg was used for a use outside the Medicaid formulary, TJCH did not bill Kentucky Medicaid. In fact, TJCH does not bill Kentucky Medicaid or any other Medicaid agency for this drug when prescribed for erectile disfunction.

57. Pavilion Pharmacy dispensed the Acetamin NDC: 69367032316 as a nonprescription, over-the-counter medication.

58. The letter accompanying the audit report stated that TJCH had the opportunity to submit arguments to HRSA to contest the finding.

59. On June 12, 2023, TJCH submitted a Notice of Disagreement disputing HRSA's finding that TJCH violated the GPO limitation. TJCH did not dispute the finding that it dispensed a 340B drug to an ineligible individual.

60. On April 3, 2025, HRSA issued a final audit report refusing to reverse its GPO limitation finding. HRSA requested that TJCH submit a corrective action plan addressing both of HRSA's findings.

61. TJCH submitted a corrective action plan to address HRSA's finding that TJCH dispensed a 340B drug to an ineligible individual, attaching a draft of this complaint to give HRSA notice of the filing.

## COUNT I
### HRSA's Finding That TJCH Violated the GPO Limitation is Arbitrary, Capricious, and Not in Accordance With Law

62. TJCH hereby incorporate by reference all preceding paragraphs of this Complaint as if fully set forth herein.

63. HRSA's finding that TJCH violated the GPO limitation is arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence, and otherwise not in accordance with law. 5 U.S.C. § 706(2)(C).

64. Pavilion Pharmacy is not part of TJCH under the definition of DSH at 42 U.S.C. § 256b(L)(4) and HRSA's September 19, 1994, guidelines. The pharmacy is not listed on a reimbursable line of the TJCH Medicare cost report.

16

65. Retail pharmacies, such as Pavilion Pharmacy, are not listed as covered entities eligible to participate in the 340B Program under 42 U.S.C. § 256b(a)(4).

66. Policy Release 2013-1 states that the GPO limitation does not apply to entities that are not part of the hospital. HRSA and Apexus have clarified that pharmacies cannot register as a covered entity or a child site. HRSA, *Can a covered entity list an in-house pharmacy as a child site?* (July 2020), https://www.hrsa.gov/about/faqs/can-covered-entity-list-house-pharmacy-child-site. HRSA's audit finding violates its own guidance and Apexus guidance.

67. Even if Pavilion Pharmacy were part of TJCH, TJCH did not violate the GPO limitation because the two drugs dispensed were not CODs. The GPO limitation only applies to covered outpatient drugs that are defined, generally, as prescription drugs that are reimbursed by Medicaid. The Acetimin Lq drug in question is not a COD because it is an over-the-counter drug that was sold without a prescription. The Sildenafil Citrate prescription is not a COD because it did not meet Kentucky Medicaid's clinical necessity standards and was not, therefore, covered by Medicaid.

68. HRSA's audit finding failed to consider relevant factors or engage in reasoned decision making. HRSA's application of the GPO limitation erroneously treats TJCH and Pavilion Pharmacy as interchangeable. Pavilion Pharmacy is distinct from TJCH for purposes of 340B hospital eligibility and registration in the 340B program.

69. In HRSA's Final Audit Report, the agency failed to describe how Pavilion Pharmacy differs from the example used in its Apexus' training or justify its deviation from the guidance. There was no consideration of the practical implications of its policy choice to deviate from the guidance given by Apexus. HRSA's audit finding is arbitrary and capricious because

as "an agency changing its course … [must] supply a reasoned analysis." *Motor Vehicle Mfrs. Ass'n of United States, Inc. v. State Farm Mut. Automobile Ins. Co.,* 463 U.S. 29, 42 (1983).

70. HRSA's determination that TJMC violated the GPO limitation is arbitrary and capricious and not in accordance with law and must be set aside.

## COUNT II
### HRSA Acted in Excess of Statutory Authority When Promulgating the Sanction Provision in Policy Release 2013-1

71. TJCH realleges and incorporates by reference paragraphs 1–58 as if fully set forth below.

72. The APA instructs courts to "hold unlawful and set aside" agency action taken "in excess of statutory jurisdiction, authority, or limitations." 5 U.S.C. § 706(2)(C).

73. HRSA's Policy Release 2013-1 is a substantive rule that exceeds HRSA's statutory authority because it lacks the authority to issue legislative 340B rules, except in limited areas specified by Congress and not applicable here. *Pharm. Research & Mfrs. of Am.*, 43 F. Supp. 3d at 41.

74. Policy Release 2013-1 fulfills (at least) one of the three factors *American Mining* factors. *Am. Mining Cong.*, 995 F.2d at 1112. The provision in Policy Release 2013-1 purportedly authorizing HRSA to remove a covered entity from the 340B program for a violation of the GPO limitation meets the first *American Mining* test because, in the absence of the Policy, HRSA would not have the authority to sanction a covered entity for violating the GPO limitation. *Id.*

75. The 340B statute only grants HRSA the authority to terminate a covered entity if the covered entity has violated the diversion or duplicate discount provisions and the violation is knowing, intentional, systemic and egregious. 42 U.S.C. § 256b(a)(5)(D), (d)(2)(B)(v)(I-II). The 340B statute does not grant HRSA any authority to sanction covered entities for violations

of the GPO limitation.  Specifically, the statute does not authorize HRSA to establish a sanction that retroactively terminates a DSH hospital from the 340B Program.

76. HRSA implicitly acknowledged that it did not have the authority to sanction covered entities for violations of the GPO limitation by providing for a future effective date for enforcement of Policy Release 2013-1.  HRSA issued Policy Release 2013-1 on February 7, 2013, but it did not become effective until August 7, 2013.  HRSA, therefore, conceded that it did not have the authority to sanction a covered entity, including declaring a covered entity ineligible for the program, prior to the effective date of Policy Release 2013-1.  Because, in the absence of Policy Release 2013-1, HRSA does not have the authority to sanction a covered entity for purchasing GPO drugs, Policy Release 2013-1 a substantive rule.

77. HRSA does not have authority to promulgate substantive rules governing the GPO limitation.  HRSA exceeded its authority to issue the substantive rule in Policy Release 2013-1 that purport to give HRSA the authority to declare a covered entity retroactively ineligible for violations of the GPO limitation.  In *Pharm. Research & Mfrs. of Am. v. HHS*, this Court set aside HRSA's regulations implementing an "orphan drug" restriction in the 340B statute after determining that HRSA lacks the authority to promulgate regulations except in a few narrow circumstances. 43 F. Supp. 3d 28 at 37-47 (interpreting 42 U.S.C. § 256b(3)).  The GPO limitation does not fall within those circumstances, which means HRSA does not have the legal authority to enforce it through a substantive rule.

78. Because the sanction provision in Policy Release 2013-1 is a substantive rule, and HRSA does not have the authority to issue substantive rules with respect to the GPO limitation, those provisions are invalid and unenforceable.

## RELIEF REQUESTED

**WHEREFORE**, TJCH respectfully requests relief as follows:

a. A declaration that HRSA's Policy Release 2013-1 is a substantive rule promulgated in excess of HRSA's statutory authority and is, therefore, invalid;

b. A declaration that HRSA's Policy Release 2013-1 is unlawful as applied to TJCH or Pavilion Pharmacy;

c. An order setting aside and vacating HRSA's audit finding that TJCH violated the GPO limitation;

d. An order enjoining HRSA from applying the sanction provisions in Policy Release 2013-1;

e. An order awarding TJCH the costs and fees incurred in this litigation and granting such other relief in law and/or equity as this Court may deem just and proper.

Respectfully submitted,

/s/Ronald S. Connelly
Ronald S. Connelly
D.C. Bar No. 488298
Barbara Straub Williams
D.C. Bar No. 396582
POWERS PYLES SUTTER & VERVILLE, PC
1501 M Street, N.W., 7th Floor
Washington, DC 20005
Tel. (202) 872-6762
Fax (202) 785-1756
Ron.Connelly@PowersLaw.com
Attorneys for Plaintiff

Dated: December 12, 2025